SuTiiír, J.
This proceeding by habeas corpus is, by the statute of this state, made applicable to any person except a convict, or one committed for treason or felony, who is or shall be unlawfully deprived of his or her liberty; and who-shall make application, as prescribed, either by him or herself, or some person on his or her behalf, for the benefit of the writ.
The application, in this case, is to be regarded as made by the affiant in behalf of the person deprived of his liberty. .
The only question for our consideration is the character of the detention. Is the party unlawfully deprived of his liberty?
It appears, from the record, that Samuel Disinger voluntarily enlisted, and entered into the military service of the United *258 ;States, on the 23d day of September, 1861, for the term of three years; and was, on the 21st of November, 1861, regularly mustered into the service of the United States, and has 'been regularly sworn into the service. It is not pretended that there has been any irregularity in the enlistment, or mustering the party into the service which would entitle him to a discharge, or render his detention illegal, if he had the power to legally enlist as such volunteer. But the record shows that Samuel Disinger is, by the law of this state, a ■minor, being only eighteen years of age, on the 16th day of July, 1861, and that at the time of his enlistment, his father, the affiant, was a resident of the county, and had no ■knowlédge of said enlistment, and did not give his consent thereto. It is, therefore, insisted that the engagement or undertaking on the part of Samuel, was one which it was not competent for him to make, and so can not be obligatory upon him, or upon his father, to whom his custody and services belonged, during the years of his minority. It has been urged by counsel in their arguments, that the enlistment of a minor is to be regarded as a mere contract and so voidable at common law. But the contract of a minor beneficial to himself, may, by the rules of the common law be as binding upon him as a like contract would be upon an adult; and in this view of the case, it might not be certain that the enlistment, even if regarded as a mere contract, would be held void by the ■rules of the common law.
But the enlistment can not properly be regarded as a mere ■ contract, and to be governed only by laws applicable to ordinary contracts. The case is one governed by public policy as well as by the rules of the common law. The safety of the government is the highest interest of society. The interest of society is the interest of each and all of its members. Every able-bodied citizen is under moral as well as patriotic obligations to respond to the call of government, to render service for its self-defense, in such an exigency. Indeed, the claims of government even in times of peace, upon the services of the citizen, though a minor, is superior to the claims *.of the parent. This is said to be the common law of Eng *259 ■land; and there is certainly nothing in the ■ structure of our government or in the character and relations of our people opposed to the conclusion that such is the common law'here. This doctrine has been recognized in times of peace both in England and in this country ; and all the reasons supporting it apply with much more force in times of war, insurrection or invasion. See the cases of The King v. The Inhabitants of Rotherfield Greys, 1 Barn. & Cress. 345; and The Commonwealth v. Gamble, 11 Serg. & Rawle, 93.
But the power of the minor to enlist, even if the enlistment be put upon the ground of contract made with the general government through its recruiting officer, must depend not ■upon the statutes of this state, but upon the laws of the United States.
The constitution, which declares that the laws of the United States which shall be made in pursuance thereof * * * shall be the supreme law of the land, gives to the general government power to raise, and support armies, * * * to provide for calling forth the militia to execute the laws of .the Union, suppress insurrection and repel invasion.
In pursuance of these powers invested in the general government, by the constitution, congress, for the purpose of suppressing a formidable insurrection for the overthrow of the go’vernment, on the 22d of July, 1861, passed “ an act to authorize the employment of volunteers to aid in enforcing the laws, and protecting public property.” It is provided in the first section of said act, as follows : “ Whereas, certain of the forts, arsenals, custom-houses, navy yards, and other property of the United States, have been seized, and other violations of law have been committed and áre threatened by organized bodies of men in several of the states, and a conspiracy has been entered into, to overthrow the government of the United States : therefore—
■“Be it enacted by the Senate and House of Representatives of the United States in Congress assembled, That the-President be, and he is hereby authorized to accept the service of volunteers, either as cavalry, infantry or artillery, in such number not exceeding five hundred thousand, as he may *260 deem necessary for the purpose of repelling invasion, suppressing insurrection, enforcing the laws, and preserving and protecting public property: Provided, that the 'services of volunteers shall be for such time as the President may direct, not exceeding three years, nor less than six months, and they shall be disbanded at the end of the war. And all provisions of law applicable to three years’ volunteers shall apply to-two years’ volunteers, and to all volunteers who have been, or may be accepted into the service of the United States for a period not less than six months, in the same manner as if such volunteers were specially named.”
It is also provided by the same section that the President shall, before receiving the volunteers into the service, from time to time issue his proclamation, stating the number desired either as cavalry, infantry, or artillery, and the state from which they are to bo furnished, etc.
All the other sections of the act relate to the organization, equipment, provisioning, compensation, etc., of such volunteers after entering the service.
It is certain, then, that the language of this law extends to all subjects of the government. It is not in its terms restricted to any age, or to any class of persons. Nor can it be pretended that the law in this particular exceeds the constitutional power of congress. The power is, in general terms, vested in congress to raise armies. The manner is left entirely discretionary. There is no restriction of that power in the instrument; except as to the purposes, and occasions of its exercise. Upon such an occasion — an insurrection threatening the existence of the government, and an invasion of the national capitol — for the purpose of suppressing the insurrection and repelling the invasion, this power of the general government, to raise armies is plenary and unqualified.
Under this exigency, therefore, expressed by the law, and of ’Which courts take cognizance as an existing condition of the country, it was within the power of congress to pass a law compelling the service of any of the subjects of the general government. Such a law might have designated any subjects. *261 of any age, class or condition, as the persons who should constitute the army. And the law being made in pursuance of the constitution, if it required only minors, apprentices, and servants owing service by the laws of the state, to constitute the .army, it could only at most be regarded as an abuse of its discretion on the part of congress. It would even, in such a case, be a sufficient legal-answer to the parent or master claiming the services of his subordinate due him by the laws of the state, that the law of congress, however arbitrary, being within the powers of congress, was the supreme law of, the land, “ anything in the constitution or laws of any state to the contrary notwithstanding.”
But this law of congress is ver-y far'from being obnoxious, to the reproach of an arbitrary or unreasonable exercise of discretion. It is not even compulsory upon any. It, however, appeals to the patriotism of all the subjects of the general government. The language of the act is a call or invitation to every able-bodied subject of the general government to come to its defense. And if the government has the authority to command the services of any class of its subjects compelled into the ranks by a law to raise an army, its authority is unquestionable to command the same persons, who have voluntarily Come into the ranks and entered the service, as soldiers of the army, so raised, composed of volunteers. The law in either case would be the supreme law of the land, and in no respect impaired or qualified by any state law.
. ' Nor is the law of congress, in this case, in its operations, at all inconsistent with our state laws, in embracing within its call persons under the age of twenty-one, but over eighteen. The legislature of this state in the act to organize and discipline the militia and volunteer militia of the state, have-limited the class of able-bodied persons constituting the militia, of the state to those over eighteen and under forty-five years of age. We have, then, the legally expressed opinion of the-state, that this applicant is within that class of our citizens most eligible and efficient to respond to the call for volunteers, made by the general government to raise armies for tliisexigency.
*262 By referring to the previous acts of congress in relation to volunteers, we find that the acts of December 10,1814, January, 1818, September, 1850, and March, 1857, seem to remain unrepealed. But each of those acts, like that of July, 1861, seems to have been passed for the occasion of its enactment. And inasmuch as the act of July, 1861, was enacted for this present exigency, we think this case is to be g ,7-erned by the provisions of that act alone.
It may, however, be instructive to refer to the provisions of the prior-acts of congress to show the powers here recognized as belonging to congress to enlist persons under twenty-one years of age, are not novel, but have, heretofore, been exercised by congress; The act of 1814, passed during the war with Great'Britain, provided that the officers “in the recruiting service be and hereby are authorized to enlist into the army of the United States any free, active, able-bodied men between the ages of eighteen and fifty years, which enlistment shall be absolute and binding upon all persons under the age of twenty-one years as well as upon persons of full age,” etc.
And another section in the same act made it the duty of -the officer to withhold the payment of bounty money and delivery of clothes to a volunteer under the age of twenty-one -for four days after his enlistment, and to extend to him the -privilege of withdrawing his enlistment within the four days. If he saw fit to do so.
If, therefore, an enlistment of a minor were to be regarded, as insisted on the part of the applicant, a mere civil contract which a minor is unable to make by the laws of this state, it would not, still, follow, that a person over the age of eighteen and under twenty-one, is incompetent to make a valid enlistment under the laws of congress.
If there is any such restraining law, it must, obviously, be a law of the general government, and not that of the state, which must, necessarily, be regarded as of no force when in conflict with this act of congress.
‘It is unnecessary to speak of the order from the war department for the government of the recruiting officers who act *263 under the law of congress, in making enlistments. It is, doubtless, competent for that department, as a precaution against improvident enlistments, and dissatisfaction on the part of parents, guardians, and masters, to instruct their recruiting officers, to confer with their superiors, or to obtain their consent before accepting the enlistment of such subordinates. And it is equally competent for the department, in its discretion, to waive the instruction so given, in a case where it has been disregarded, and ratify the act of enlist ment. This is a discretion belonging to the department over which this court has by no means any control.
We can not, in cases of this kind, look beyond the laws of congress. And in looking at those laws applicable to this-case, and the matters presented by the record before us, we are clear in the opinion that the enlistment of Samuel Disinger was a legal enlistment, under the act of congress; and that, being detained, as he is, only according to the rules of ■the service in which he enlisted, he is not unlawfully deprived of his liberty.
The judgment of the probate judge must, therefore, be reversed, and the minor remanded to the control of his superiors in the service.
Scott, C.J., and Peck, Gholson and Brinkerhoee, J J., concurred.